IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONALD RICHISON                                                                                    PLAINTIFF

    v.    Civil No. 2:12-CV-02243-JRM

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

  Plaintiff, Ronald Richison, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background:**

  Plaintiff applied for SSI and DIB on September 7, 2010. (Tr. 104, 130.) Plaintiff alleged an onset date of June 30, 2010 due to Hepatitis C. (Tr. 104, 130. ). Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on July 6, 2011. Plaintiff was present to testify and was represented by counsel. The ALJ also heard testimony from Vocational Expert ("VE") Dale Thomas. (Tr. 24.)

  At the time of the administrative hearing, Plaintiff was 49 years old, and possessed a GED. ( Tr. 32, 131.) The Plaintiff had past relevant work experience ("PRW") as a painter and painter supervisor (Tr. 18.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On August 8, 2011, the ALJ concluded that the Plaintff had the following severe impairments: "hepatitis B and C, residuals of surgical repair of a bilateral inguinal hernia, obesity, depression single episode, posttraumatic stress disorder (PTSD), intermittent explosive disorder, and left hand finger deformity." (Tr. 11.) He found that the Plaintiff maintained the residual functional capacity to

> "perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl but never climb ropes, ladders or scaffolds. He is able to perform frequent flexion with his left hand. Claimant is able to perform simple, routine and repetitive tasks involving only simple, work-related decisions, with few, if any, place changes; and no more than incidental contact with co-workers, supervisors and the general public."

(Tr. 13.) With the assistance of the VE, the ALJ determined that the Plaintiff could perform light unskilled labor, with representative occupations such as bench assembler, laundry worker, and hand packager. (Tr. 18.)

Plaintiff requested a review by the Appeals Council on August 17, 2011. (Tr. 5.) The Appeals Council denied the appeal on September 25, 2012. (Tr. 1.)

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's

findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**III. Discussion:**

Plaintiff raises two issues on appeal: 1) the ALJ erred at Step Two; and 2) the ALJ erred in his RFC assessment.

3

Because I find that the ALJ did not adequately develop the record in assessing the RFC, it is not necessary to discuss the Step Two issue.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). While the Secretary is correct that she is in under no duty to "go to inordinate lengths to develop a claimant's case[,]" *Thompson v. Califano*, 556 F.2d 616, 618 (1st Cir.1977), it is also true that she must "make an investigation that is not wholly inadequate under the circumstances." *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir.1975). The ALJ should order a consultative examination when "such an evaluation is necessary for him to make an informed decision." *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

In this case there are four areas in the record that appear inadequate for use in making an informed decision. First, ALJ relied heavily on the mental examination performed by Dr. Chambers. (Tr. 12, 16.) However, this exam report appears to be incomplete. Dr. Chambers deferred his Axis III diagnosis as to Hepatitis C and thyroid deficiencies. He also noted limitations on the Plaintiff's capacity to communicate and interact in a socially adequate manner, his capacity to attend and sustain concentration, to sustain persistence in completing tasks, and to complete tasks in an acceptable timeframe. (Tr. 296-97.) Unfortunately, he did not indicate whether these limitations were mild, moderate, marked, or extreme. *See* 20 C.F.R. §404.1520a(c)(4) ("When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme."); SSR 85-15. Nor did he indicate to what level his non-exertional impairments would affect his ability to function in the workplace. *See* SSR 96-8p. The subsequent Mental RFC appears to have

4

been based solely on Dr. Chamber's incomplete assessment and the Plaintiff's work history report on September 12, 2010. (Tr. 325.)

Second, the ALJ refused to consider the Plaintiff's diagnosis of hypothyroidism by Good Samaritan Clinic on November 10, 2010 because the claimant "provided no medical records to indicate that he had received anything other than routine treatment or that he had been physically limited by the condition." (Tr. 11.) Dr. Van Hoang, the consultative examiner relied upon by the ALJ, saw the Plaintiff on November 23, 2010, thirteen days after the Good Samaritan diagnosis. He noted that the Plaintiff was taking levothryoxine and vistaril, which are drugs for anxiety and hypothyroidism.[2] He also noted that the Plaintiff complained of pain in the shoulder and knees, and had left foot numbness. (Tr. 300.) The Plaintiff also reported urinary dribbling and diarrhea. (Tr. 299-300.)

"Symptoms and signs of primary hypothyroidism are often subtle and insidious." THE MERCK MANUAL, *Hypothyroidism*, http://www.merckmanuals.com/professional/ endocrine_and_metabolic_disorders/thyroid_disorders/hypothyroidism.html (last accessed Dec. 2, 2013.) Those symptoms can include personality changes, paresthesias (tingling and numbness) of the hands and feet, myalgias (muscle pain), arthralgias (joint pain), and incontinence. *Id.* As a diagnosis of hypothyroidism could account for some of the Plaintiff's symptoms, it is puzzling that both Dr. Van Hoang and the ALJ discounted both the recent diagnosis and his symptoms.

Third, the ALJ placed emphasis on the fact that the Plaintiff had frequently received "little treatment," "only routine treatment," or had conflicting medical records for his conditions. (Tr. 11, 14, 15.) It is correct that failure to seek treatment may be used to discredit Plaintiff's subjective complaints

---

[2] Levothryoxine is thyroid replacement hormone. This drug may aggravate diabetes. http://www.pdr.net/drug-summary/levothroid?druglabelid=1326&id=451 (last accessed Nov. 25, 2013). Vistaril is a piperazine antihistamine indcated for treatment of anxiety and tension associated with psychoneurosis and adjunct in organic disease states in which anxiety is manifested. Side effects include drowsiness and impairment of mental and physical abilities. http://www.pdr.net/drug-summary/vistaril?druglabelid=3067&id=1096 (last accessed Nov. 25, 2013).

of pain. *Moad v. Massanari*, 260 F.3d 887 (8th Cir. 2001). However, in this case, the record indicates that the Plaintiff has repeatedly sought treatment to the best of his ability as a prison inmate and later as an unemployed and uninsured individual. There are numerous reference in the medical records to his inguinal hernia, his requests for treatment of the hernia, and residual results of the subsequent treatment of the hernias, also noted by the ALJ. (Tr. 11, 14, 15, 133-34 163-64, 196-97, 200, 210, 213, 219-20, 227, 229, 236, 263, 335, 338-39.) He has sought treatment for hepatitis, only to be given conflicting diagnosis as to status, and has been told by at least one doctor that interferon treatment would not help at this point. (Tr. 15, 35, 36, 196, 215, 220, 223, 229, 240, 266, 284. ) Nothing in the record indicates that he is not following prescribed treatment for hypothyroidism.

Additionally, other than the two consultative exams ordered by the Agency, his sources of medical treatment have been the Arkansas Department of Corrections Medical Services ("ADC"), the Good Samaritan Clinic, and his inguinal hernia surgery at Sparks Medical Center on December 17, 2010. The notations on the Sparks record state that the hernias were on both left and right sides, with the right hernia large, bulging into the groin, and "impressive." (Tr. 338-39. ) He was diagnosed with a right hernia on his initial physical exam with the ADC on October 16, 2008. (Tr. 196.) Although referred for a surgical consult on the hernia while incarcerated, (Tr. 229.), he did not receive hernia surgery; only a hernia belt.(Tr. 236.) The ADC did, however, place limitations on his work and activities as a result of the hernia and his Hepatitis B and C. (Tr. 197.) As the ALJ noted during the hearing, the Plaintiff owes Sparks Medical Center somewhere between $1,000 to $5,000 for his hernia surgery. (Tr. 38.) His ADC records also indicate diabetes in his diagnosis. (Tr. 14, 199.) Yet there is no further discussion of the disease in the medical records. Given the sources and conditions of treatment, it is not surprising that the Plaintiff has a sporadic and inconsistent medical record or that he was receiving only the most routine treatments when he received them at all.

Fourth, in discounting the Plaintiff's subjective symptom reports, the ALJ failed to consider any medication side effects. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (The ALJ must consider "the dosage, effectiveness, and side effects of medication" in evaluations claimant's subjective reports of pain.) The Plaintiff is taking at least one drug that can cause drowsiness and other impairments. He testified that he "gets disoriented." (Tr. 39, 45.) His medical records show that he complained of dizziness (Tr. 146) and drowsiness (Tr. 164.). Perhaps even more troubling, assuming that a diagnosis of diabetes is correct, his thyroid medication could aggravate it.[3]

In summary, the record shows that the ALJ did not fully develop the record, therefore his opinion is not supported by substantial evidence. On remand, the ALJ is directed to order a consultative examination with an endocrinologist to evaluate the Plaintiff's hypothyroidism and other possible metabolic disorders. As part of the physical examination, the identification, dosage, and possible side effects of all medications should be expressly determined. If the endocrinologist cannot evaluate the Plaintiff's full range of physical complaints, a second consultative exam should be ordered so that the Plaintiff can have a complete physical record upon which to base his RFC. Once the physical examination record is completed, the ALJ is directed to recontact Dr. Chambers with that physical information so that Dr. Chambers can complete his Axis III diagnosis and also provide further clarification as to the specific degree of limitation for the Plaintiff. All information gained from physical or mental examinations should be expressly considered by the ALJ in formulating the Plaintiff's RFC.

### V.   Conclusion:

Accordingly, I conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 2nd day of December, 2013.

---

[3] PDR, *supra* n. 2.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE